ERIC AND SUSAN YOUNG
12402 N Division St #167
Spokane, WA 99218
PHONE (936-463-8411)
EMAIL eyoung-encrypt@pm.me
        jaegersmum@proton.me
Defendants Pro Se

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| I In re:<br>ERIC ROSS YOUNG and<br>SUSAN LINETTE YOUNG,<br>    Debtors.<br>_____ | CASE NO. 25-01029-FPC7<br><br>CHAPTER 7<br><br>ADVERSARY NO. 25-80038-FPC |
| LINDA COLE and TED COLE,<br>    Plaintiffs,<br>v.<br>ERIC ROSS YOUNG and<br>SUSAN LINETTE YOUNG,<br>    Defendants. | DEFENDANTS' MOTION TO STRIKE<br>REDUNDANT, IMMATERIAL, IMPERTINENT,<br>OR SCANDALOUS MATTER (FED. R. CIV. P.<br>12(F), AS INCORPORATED BY FED. R.<br>BANKR. P. 7012(B)) |

## I.    RELIEF REQUESTED.

Defendants Eric R. Young and Susan L. Young move for an order that:

1.  Strikes the specified allegations in Plaintiffs' § 523 complaint as immaterial, impertinent, or

    scandalous under Fed. R. Civ. P. 12(f) (incorporated by FRBP 7012);

2.  Directs Plaintiffs to file, within 7 days, a clean amended complaint removing the struck

    matter (or a redline showing the deletions);

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 1 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

3. Issues a court-initiated Order to Show Cause under FRBP 9011(c)(3) requiring Plaintiffs and their counsel to appear and show cause why sanctions should not enter for repeatedly filing/maintaining allegations that contradict the documentary record and the state court's express finding that "Plaintiffs cannot establish a claim of fraud" (FOF ¶ 212), and for importing those accusations into multiple federal filings;

4. Orders accelerated Rule 26(a)(1) initial disclosures (within 7 days), limited to the persons, documents, and ESI Plaintiffs will rely upon to prove the specific § 523 allegations that remain after the Court's ruling; and

5. Stays all other discovery pending the Court's decision on this motion and the 9011 OSC.

## II. INTRODUCTION

Plaintiffs' § 523 complaint is freighted with pathos, pejoratives, and collateral state-case color that have no bearing on the elements of § 523(a)(2)/(4)/(6). It also repeats a "forgery/converted funds" narrative that the documentary record undercuts and that a state judge declined to adopt after trial, expressly finding Plaintiffs "cannot establish a claim of fraud" (FOF ¶ 212). Plaintiffs' counsel nevertheless imported the same storyline into federal filings (including pre-removal and post-removal papers and this adversary complaint). Rule 12(f) exists to remove precisely this kind of prejudicial surplusage. Given the repeated pattern across dockets, a court-initiated FRBP 9011(c)(3) OSC is warranted.

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 2 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

### III.    Rule 12(f) Targets (by paragraph/category)

Strike the following content in Plaintiffs' 523(a) complaint as immaterial, impertinent, or

scandalous. The list is precise and tracks the filed complaint by paragraph numbering:

A. **Age/family/religion pathos (irrelevant to § 523 elements):** ¶¶ 2.3, 2.5–2.6; Appendix A

   FOF ¶¶ 5–6.

B. **Conclusory, Unsupported, Scandalous knowingly false statements and phrases**

   Strike the following words/phrases wherever they appear in the complaint:

- "forged Linda Cole's signature," "forgery," "forging," "impersonation," "stole,"

   "converted [as a rhetorical label, not as the separate state-law cause finding],"

   "concocted," "ingratiated," "manipulated," "cut Plaintiffs out," "hid," and comparable

   scandal terms in ¶¶ 2.8, 2.11–2.12, 2.33–2.47; and

- any assertion that deliberately ignores Plaintiffs' rescission/withdrawal communications

   and their admission of two wires while purporting to frame a theft rather than a

   contested transaction, because such framing is immaterial or impertinent to § 523

   elements and unduly prejudicial.

C. **Strike for Contradiction/Immateriality/Prejudice**

   Plaintiffs' complaint deploys scandal rhetoric ("forged," "stole/converted," "concocted,"

   "manipulated") while their own writings and admissions show (i) an acknowledged

   purchase transaction they later withdrew from and (ii) gift-letter and bank-verification steps

   consistent with a consensual mortgage process. Compare Compl. ¶¶ 2.35–2.44 (alleging

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 3 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

Linda intended to move funds to Chase and then "write the seller a personal check"), with Linda's Oct. 30, 2023 text—"we have changed our minds… we are withdrawing… $242,314.62 + $119,698.04 = $362,012.66; cancel the loan"—and Plaintiffs' RFA admissions that OWFCU verified Linda on the calls; OWFCU then confirmed receipt of notarized pages and sent the two wires. The rhetoric adds prejudice without probative value to § 523 elements and should be stricken. Whittlestone, 618 F.3d at 973–75; Fantasy, 984 F.2d at 1527; Bureerong, 922 F. Supp. at 1479 n.34.

D. **Rhetorical epithets/poison-the-well phrasing:** ¶¶ 2.11 ("ingratiating…concocting"), 2.12, 2.16 (first sentence), 2.17 ("scheme was born"), 2.19–2.22, 2.62–2.67 ("extraordinarily manipulative," "weapon," doomsday/religion tropes), and similar adjectives wherever they appear.

E. **Remote biography / propensity:** ¶¶ 2.14–2.15 (old debts/judgments/tax lien), 2.17 (credit history), Appendix A FOF ¶¶ 9–11, 16–26, 31–36 (on-again/off-again family history, wills, school choices, Texas lot, etc.).

F. **Contempt/incarceration color and editorializing**: ¶¶ 2.82–2.87 (e.g., "intransigence," "unbelievably," bench-warrant/incarceration rhetoric). If a discrete fact is truly necessary later, it can be set out neutrally, without advocacy.

G. **Mischaracterizations of state-court outcome**: any phrasing in ¶¶ 2.8–2.10 that suggests a final "prevail/award/forgery finding," without disclosing that the same FOF also states

DEFENDANTS' MOTION TO STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER (FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR. P. 7012(B))
PAGE 4 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

Plaintiffs "cannot establish a claim of fraud" (¶ 212) and that the order is non-final. At minimum, require neutral, accurate language or strike.

H. **Vulnerability of Plaintiffs and counsel's duties.**

The Court may also consider that counsel's clients are in their eighties and rely on him for legal judgment. RPC 1.14 requires a lawyer to protect - not exploit - a client with diminished capacity; RPC 3.3/4.1/8.4 prohibit false statements to a tribunal and dishonest conduct. Re-filing accusations that the lawyer knows are contradicted by the file harms both the opposing parties and the clients. That is an additional reason to require a 9011(c)(3) explanation and to consider referral. Defendants' future filings include calls for WSBA and other referrals on multiple grounds.

## IV.    LEGAL STANDARD

Rule 12(f) authorizes striking matter with no possible bearing on the controversy and material included only to inflame or prejudice. Bankruptcy courts also police pleadings to protect the integrity of proceedings. FRBP 9011 imposes a continuing duty that factual contentions "have evidentiary support"; FRBP 9011(c)(3) permits the Court to initiate sanctions via OSC when papers appear abusive or knowingly misleading - no party "safe harbor" is required for a court-initiated OSC.

Argument

1. The listed allegations have no bearing on any § 523 element and are unfairly prejudicial. Age, grandparent status, religious affiliation, family biography, and

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 5 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

contempt/incarceration color invite emotion, not adjudication. They should be removed now, before case-management deadlines and any discovery disputes.

2.  Plaintiffs' counsel repeats a "forgery/converted funds" storyline that conflicts with the documentary record and with the state court's trial finding (FOF ¶ 212). Counsel has repeatedly filed federal papers pushing the same accusations. The Court can and should require a clean, narrowed pleading and issue an OSC under FRBP 9011(c)(3) to test counsel's basis for persisting in those accusations across four federal touches (pre-removal submissions, removal papers, objection/response in the main case, and this § 523 complaint), plus the removed state docket.

3.  Case-management. Because the motion goes to the complaint's admissible core, Defendants ask the Court to: (a) decide this 12(f)/OSC early; (b) accelerate Rule 26(a)(1) disclosures limited to what Plaintiffs will actually rely upon to prove any surviving § 523 allegation (names, documents/ESI, damages computations); and (c) stay further discovery until the Court resolves the 12(f)/OSC. This avoids needless cost and prevents another cycle of pathos-heavy pleading tactics bleeding into discovery.

## V.    9011(c)(3) – Request for Court-Initiated OSC (No Safe Harbor Requested)

Defendants respectfully request that the Court, on its own initiative under FRBP 9011(c)(3), order Plaintiffs and their counsel to show cause why sanctions should not enter based on:

•   Maintaining and re-filing the "forgery/converted funds" narrative in federal court after a state judge found Plaintiffs failed to prove fraud (FOF ¶ 212);

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 6 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

- o   Omitting or downplaying documentary records (bank authorization/acceptance; signed indemnities; lender/gift documentation) that undercut those accusations; and

- o   Re-importing inflammatory, non-element rhetoric (age/family/religion/incarceration color) designed to prejudice rather than to plead a cognizable § 523 claim.

- Sanctions may include striking offending portions of the complaint, monetary sanctions (including against counsel and the firm), fee-shifting, and referrals the Court deems appropriate.

## VI.    Accelerated Initial Disclosures; Discovery Stay

The Rule 26(f) conference has already occurred. To narrow issues promptly, Defendants ask the Court to order Plaintiffs to serve Rule 26(a)(1) initial disclosures within 7 days of the order, limited to (i) witnesses; (ii) documents/ESI; and (iii) damages computations they actually intend to use to prove any § 523 element that survives the Court's ruling. Defendants further request that all other discovery be stayed pending the Court's decision on this motion and the OSC.

## VII.    Requested Order

Defendants request entry of an order that:

1. Grants the Rule 12(f) motion and strikes the paragraphs and categories listed above (as itemized in Exhibit A);

2. Directs Plaintiffs to file, within 7 days, a clean amended complaint reflecting the Court's ruling (or a redline showing deletions);

DEFENDANTS' MOTION TO STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER (FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR. P. 7012(B)) PAGE 7 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

3. Issues an OSC under FRBP 9011(c)(3) to Plaintiffs and their counsel, with a prompt hearing date;

4. Orders Plaintiffs to serve Rule 26(a)(1) initial disclosures within 7 days (limited as described), and stays all other discovery pending disposition of the motion/OSC; and

5. Awards fees/costs and grants such further relief as is just.

DEFENDANTS' MOTION TO STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER (FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR. P. 7012(B))
PAGE 8 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

## VIII.    EXHIBITS

- Exhibit A – Paragraph-by-paragraph strike list (by number) with short reasons;

- Exhibit B – State FOFCOL excerpt including FOF ¶ 212 ("Plaintiffs cannot establish a claim of fraud");

- Exhibit C – OWFCU wire documents/confirmations and indemnity pages (authorization/acceptance framework);

- Exhibit D – BCPD incident transcript excerpts reflecting bank verification and "unfounded" disposition;

- Exhibit E – Plaintiffs' federal filings that repeat the "forgery/converted funds" narrative (July 3 objection/response; Sept. 15 § 523 complaint excerpts);

- Exhibit F –Chronology - Four federal filings and the removed docket entries showing repetition across tribunals.

Respectfully Submitted,

Dated: October 15, 2025

/s/     *Eric Young*            */s/ Susan Young*

Eric Young                 Susan Young

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

We certify under penalty of perjury under the laws of the state of Washington that the foregoing

is true and correct.


DATED this 15th day of October, 2025, at Spokane, WA.



/s/      *Eric R. Young and Susan L. Young*
ERIC AND SUSAN YOUNG
12402 N Division St #167
Spokane, WA 99218
PHONE (936-463-8411)
EMAIL eyoung-encrypt@pm.me
          jaegersmum@proton.me

Defendants Appearing Pro Se

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 10 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

# IX.  CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the WAEB Electronic Dropbox system for Pro Se Debtors/Defendants, which will send notification of such filing, and utilized email as noted below, to provide notice to the following:

Matthew Mensik
Riverside NW Law Group
505 W. Riverside Ave. Suite 208
Spokane, WA 99201
*And via email:*
mam@rnwlg.com


Trustee John D. Munding
309 E Farwell Rd, Ste 310
Spokane, WA 99218-1152
*And via email:*
John@mundinglaw.com


U.S. Trustee
U.S. Court House
920 W Riverside Ave, Suite 593
Spokane, WA 99201

|  | */s/*    *Eric R. Young and Susan L. Young* |
|---|---|
|  | ERIC AND SUSAN YOUNG |
|  | 12402 N Division St #167 |
|  | Spokane, WA 99218 |
|  | PHONE (936-463-8411) |
|  | EMAIL eyoung-encrypt@pm.me |
|  | jaegersmum@proton.me |
|  | Defendants Appearing Pro Se |

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 11 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

# EXHIBIT A

# IDENTIFIED ALLEGATIONS TO STRIKE UNDER FRCP 12(F) AS REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 12 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

## Identified Allegations to Strike Under FRCP 12(f)
## (by Paragraph/Category)

The following allegations in Plaintiffs' § 523 complaint are immaterial, impertinent, or scandalous. They do not plead any element of §§ 523(a)(2), (4), or (6), and they inject prejudice and confusion.

**A. Age, family-status, and religion pathos (irrelevant to § 523 elements)**

1.  ¶ 2.3 ("elderly individuals (80 and 79)").

2.  ¶ 2.5 ("Susan is Linda's only child").

3.  ¶ 2.6 ("Defendants have one child, Linda's only grandchild").

4.  Appendix A FOF ¶ 5 ("only grandchild" repetition).

5.  Appendix A FOF ¶ 6 ("Both families are active members in the church of Jehovah").

6.  Reason: These identity appeals invite prejudice; they do not make any § 523 element more or less probable.

**B. Rhetorical epithets / "poison-the-well" phrasing**

7.  ¶ 2.11 ("ingratiating themselves… concocting and carrying out a plan").

8.  ¶ 2.12 ("somewhat rocky relationship").

9.  ¶ 2.16, first sentence ("began ingratiating themselves").

10. ¶ 2.16 (remodel passage: motives attributed to Defendants without facts).

11. ¶ 2.17 ("scheme was born," financial speculation).

12. ¶¶ 2.19–2.22 (speculative mind-reading: "worked on Plaintiffs," "hurry Plaintiffs' movement," "selling Plaintiffs on the idea").

DEFENDANTS' MOTION TO STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER (FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR. P. 7012(B))
PAGE 13 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

13. ¶ 2.62 ("extraordinarily manipulative tactics… using [grandson] as a weapon").

14. ¶ 2.65 ("aggressive and condescending tactics").

15. ¶¶ 2.66–2.67 (editorial commands/taunts).

Reason: These labels add heat, not light. Any genuinely relevant fact can be stated neutrally.

## C. Remote biography and propensity attacks

16. ¶ 2.14 (historic "financial difficulties… asked to pay off $216k mortgage… asked for other money").

17. ¶ 2.15 (old judgments, tax lien, 2016 loan).

18. ¶ 2.17 ("review of… credit history" - irrelevant stigma).

19. Appendix A FOF ¶¶ 9–11 (on/off relationship, years without communicating).

20. Appendix A FOF ¶¶ 16–26, 31–36 (Texas lot; arrears; inheritance; wills; school choice; other life-history).

Reason: Propensity and character evidence masquerading as pleading; none of it establishes a § 523 element tied to the October 2023 transfers.

## D. Contempt/incarceration color and editorializing

21. ¶ 2.82 ("The truth… came to light") - editorial.

22. ¶ 2.83 (threats of incarceration; "intransigence," "blatant violation").

23. ¶ 2.84 (bench warrant/incarceration narrative).

24. ¶ 2.85 ("'found' a $24,000 cashier's check") - scare quotes imply deceit.

25. ¶ 2.86 ("Unbelievably… only $24,000 and an RV").

DEFENDANTS' MOTION TO STRIKE REDUNDANT,
IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER
(FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR.
P. 7012(B))
PAGE 14 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

26. ¶ 2.87 (bank-movement counts and stock transactions - propensity slur untethered to any § 523 element).

27. Reason: Designed to inflame; not elements of § 523. If any discrete fact is later truly relevant, it can be presented neutrally with proper foundation.

**E. Mischaracterizations of state-court outcome**

28. Any phrasing in ¶¶ 2.8–2.10 implying a final "award," a judicial "finding of forgery," or a conclusive conversion judgment without disclosing that the same FOF states "Plaintiffs cannot establish a claim of fraud" and that the order is non-final.

Remedy: Strike such phrasing, or require neutral, accurate wording that does not mislead about the state record.

**F. Religion-based aspersions and doomsday imagery**

29. ¶ 2.64 (Great Tribulation; "people… hunting them down with guns"; "money… 'worthless'"; "this is scriptural" and "here's your opportunity").

Reason: Highly prejudicial; not probative of any § 523 element. If Plaintiffs believe a specific statement is an actionable misrepresentation of fact, it must be pleaded with particularity; otherwise, strike.

**G. Duplicative, conclusory element drumbeat**

30. 28. ¶¶ 3.3–3.6 (repetitive "false, fraudulent, deceptive schemes" boilerplate).

31. 29. ¶¶ 4.2–4.5 (embezzlement/larceny counts loaded with pejoratives).

32. 30. ¶¶ 5.2–5.7 (willful/malicious with cumulative adjectives).

DEFENDANTS' MOTION TO STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER (FED. R. CIV. P. 12(F), AS INCORPORATED BY FED. R. BANKR. P. 7012(B))
PAGE 15 OF 16

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

1  Remedy: Retain one neutral element statement per count; strike duplicative adjectives and

2  cumulative pejoratives.

3  **H. Clarifying note on neutral facts (if any remain)**

4  33. If the Court determines a discrete fact within any of the paragraphs above is arguably

5  relevant to a § 523 element, Defendants request the Court require Plaintiffs to re-plead

6  that fact in neutral, non-prejudicial language, stripped of pathos and epithets, and to

7  remove all collateral narrative not tied to a specific element.

**Requested Disposition of Exhibit A Matters**

Grant the motion to strike as to each listed paragraph/segment; direct Plaintiffs to file, within 7

days, a corrected pleading that omits the stricken matter or presents any Court-permitted residue

neutrally and succinctly.

Eric and Susan Young - Defendants Pro Se
12402 N Division St #167 :: Spokane, WA 99218
PHONE (936-463-8411)
eyoung-encrypt@pm.me - jaegersmum@proton.me

# EXHIBIT - B

# FINDINGS OF FACT...

# COULD NOT
# ESTABLISH FRAUD

206.    Once the parties' agreement fell through, except for the $6,000.00 non-refundable earnest money, Mr. and Ms. Young had no right to retain and use those funds.

207.    It is undisputed that the additional $62,314.62 above the $180,000.00 transferred into Mr. Young's account was not a gift.  Despite this, Mr. and Ms. Young have not returned the money.

208.    It is also undisputed that $119,698.04 was never supposed to be transferred into Mr. Young's account and even though the Youngs acknowledge this, they refused to return the funds until February 14, 2024.

209.    Mr. and Ms. Cole have been deprived of the use and possession of their money.

**FRAUD**

210.    To prove fraud, the Coles must show by clear, cogent, and convincing evidence the nine elements of fraud, or in the alternative, may show that the Youngs breached an affirmative duty to disclose a material fact.  *Baddeley v. Seek*, 138 Wn. App. 333, 338, 156 P.3d 959 (2007).

211.    The nine elements are: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the Youngs knew the fact was false or was ignorant of its truth; (5) the Youngs intended the Coles to act on the fact; (6) the Coles did not know the fact was false; (7) the Coles relied on the truth of the fact; (8) the Coles had a right to rely on it; and (9) the Coles had damage.  *Id.* at 338-339.

212.    The Coles cannot establish a claim of fraud.

213.    The Coles must show that the Youngs misrepresented an existing fact.  Even if the court found that there was an agreement to put the Coles on the title and mortgage, a promise to do something is not an existing fact.


IT IS ORDERED that:

# Exhibit C –Chronology - Four federal filings

| Date | Forum / Case | Filing / Event | Key assertions repeated | Notes / why it matters |
|---|---|---|---|---|
| Jun 13, 2025 | State case (pre-removal) | Plaintiffs file and note for hearing: Motion for Final Judgment and Motion for Contempt, plus declarations/notes for motion docket | Pushes "forgery / conversion of ~$362k" narrative; seeks contempt leverage and control over the RV | Filed four days after the Ch. 7 petition; these filings are the core of the § 362(a) violation and are later left on file after noticed |
| Jun 17, 2025 | State case (pre-removal) | Judicial assistant email: hearing stricken after bankruptcy notice | No withdrawal of the filed papers; they remain of record | Establishes the Eskanos "continuing violation" period; willfulness starts with this written notice |
| Jul 3, 2025 | Main BK case (25-01029) | Response to Motion to Extend Stay and Mensik Declaration | Re-asserts that Debtors "converted" $362,000 "by forging" Linda's signature; claims the state court "awarded" the RV; asks to proceed in state court | First federal iteration; same storyline presented to this Court despite the sufficiently firm FOF 212; state record and bank/lender documents |
| Jul 8, 2025 | Main BK case (25-01029) | BK Court hearing on stay extension; Court continues stay; instructs to file § 523 if creditors believe in the claim | Judge notes the state judge "didn't find fraud"; tells parties that dischargeability belongs here, not in state | Federal guidance ignored in later filings — the storyline is repeated again in § 523 papers |
| Sep 8, 2025 | Removed action (25-80037) | Notice of Removal (state action into BK court) | Brings the June 13 judgment/contempt papers (and the TRO/PI chain) onto the federal docket | State filings become Third federal republication of debunked false narrative; sets the table for § 1450/Rule 65 dissolution, 60(b)(4) if necessary (void restraints, no bond/no findings) |
| Sep 9, 2025 | Removed action (25-80037) | Amended Notice / Filing-date clarification | — | Cures any timeliness ambiguity; keeps all state filings squarely before the Court |
| Sep 15, 2025 | § 523 AP (25-80038) | § 523(a) Complaint (objecting to dischargeability) | Repeats "forgery / converted funds" claims; mischaracterizes state posture (suggests prevailing and an "award" of the RV); appends state FOF/COL but downplays FOF ¶ 212 ("Plaintiffs cannot establish a claim of fraud"); asks for RV title transfer in a dischargeability AP | Second federal re-iteration; imports the same narrative and adds relief beyond § 523's scope (title transfer) |

| Date | Forum / Case | Filing / Event | Key assertions repeated | Notes / why it matters |
|------|--------------|----------------|------------------------|------------------------|
| Sep 22, 2025 | Mis-filed in 25-01029 (main case) (captioned to 80038) | FRBP 9027(e)(3) non-consent / "we will remand" statement | Again asserts the state court "found conversion" and that the RV was "awarded" to Plaintiffs; announces intent to remand | Third federal touch; mis-captioned / mis-docketed, but it repeats the same storyline and non-consent theme |
| [Filed / noticed thereafter] | Removed action (25-80037) | Motion to Remand / Abstain (noticed by Plaintiffs)  ④ | Leans on the same "we prevailed" narrative to urge remand/abstention | Fourth federal restatement, continues to press the same failed narrative;  Repeats dismissed rhetoric |

# EXHIBIT - D

# OFFENSIVE and SCANDALOUS REPUBLICATION

1 MATTHEW A. MENSIK, WSBA #44260
2 Email: mam@rnwlg.com
  RIVERSIDE NW LAW GROUP, PLLC
3 905 W. Riverside Ave, Suite 208
  Spokane, WA 99201
4 Telephone: (206) 949-3540
5
6 Attorneys for Creditors Ted & Linda Cole
7
8
9
10
11
12 **UNITED STATES BANKRUPTCY COURT**
13 **EASTERN DISTRICT OF WASHINGTON**
14
   In re:
15
   Eric Ross Young                    Case No.  25-01029-FPC7
16 (Debtor)
17                                     Chapter 7
   Susan Linette Young
18 (Joint Debtor)
                                       Adv. Case No.
19 ─────────────────────────
20
   TED AND LINDA COLE,                 COMPLAINT OBJECTING TO
21                                     DISCHARGE OF DEBT PURSUANT
   Plaintiffs                          TO 11 U.S.C. § 523(a) AND FOR
22                                     JUDGMENT THEREON
23 vs.
24
   ERIC ROSS YOUNG and SUSAN
25 LINETTE YOUNG,
26
27 Defendants
28

COMPLAINT OBJECTING TO DISCHARGE                    **R**|**N/W**   Riverside NW Law Group, PLLC
- 1                                                                905 W. Riverside Ave, Ste 208
                                                                   Spokane, WA 99201
                                                                   (509) 606-0746 | rnwlg.com

Plaintiffs Ted & Linda Cole, by and through their attorneys of record, Riverside NW Law Group, PLLC, hereby allege as follows:

## I. PARTIES AND JURISDICTION

1.1 Defendants Eric Ross Young and Susan Linette Young filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 9, 2025, Case No. 25-01029-FPCY ("Underlying Case"). This adversary proceeding relates to the Underlying Case.

1.2 Plaintiffs Ted & Linda Cole, at all times mentioned, are citizens of the State of Oregon, and are creditors in the Underlying Case.

1.3 This is a core proceeding over which this Court has jurisdiction under Title 28 U.S.C. § 157(b)(1) and (b)(2)(1).

1.4 Pursuant to Rule 7008-1, Plaintiffs consent to entry of final orders or judgment by the bankruptcy court.

## II. FACTUAL ALLEGATIONS

### A. Relationship Between the Parties.

2.1 Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

2.2 At all times material hereto, Defendants Eric Ross Young and Susan Linette Young were married comprising a marital community residing in Spokane County, Washington. All acts of either spouse were taken for the benefit of the

marital community.

2.3    At all times relevant, Plaintiffs were elderly individuals (80 and 79 years of age).

2.4    Defendant Susan Linette Young is the biological daughter of Plaintiff Linda Cole, and the stepdaughter of Plaintiff Ted Cole.

2.5    Defendant Susan Young is Plaintiff Linda Cole's only child. Defendant Eric Young is Plaintiffs' son-in-law.

2.6    Defendants have one child, that is Linda Cole's only grandchild.

**B. State Court Lawsuit and Bench Trial.**

2.7    Plaintiffs filed a lawsuit against Defendants in the case of *Linda Cole and Ted Cole v. Eric Ross Young and Susanann Lynette Young*, Spokane County Superior Court, Case No. 23-2-04734-32 ("State Court Case"), filed on November 6, 2023.

2.8    The Plaintiffs prevailed against Defendants in a bench trial in the State Court Case held before the Honorable Judge High-Edward on January 13-16, 2025. Judge High-Edwards found that the Debtors converted over $362,000 of the Plaintiffs' monies in part by forging Linda Cole's signature on a wire transfer form so that the money would be wired directly to Eric Young instead of to Linda Cole's bank account.

2.9    Among other relief, Judge High-Edwards awarded the Coles

COMPLAINT OBJECTING TO DISCHARGE - 3

R | NW  Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

ownership of a Forest River Sierra Luxury, VIN 4X4FSER20PJ052281 ("RV") (purchased by the Debtors', using the Coles' converted funds in violation of a court order prohibiting the use of the funds) and $24,000 which is currently in the Coles' counsel's trust account that was turned over by Debtors during the litigation.

2.10   Attached hereto as **Appendix A** is a true and correct copy of the Findings of Fact and Conclusions of Law entered in the State Court Case, signed by Judge High-Edward, on March 10, 2025.

**C. Facts**

2.11   This case is about the Defendants ingratiating themselves with the Plaintiffs after years of estrangement and then concocting and carrying out a plan to take possession of $362k of the elderly Plaintiffs' monies for their own benefit in October of 2023.

2.12   Plaintiffs and Defendants have had a somewhat rocky relationship over the years.

2.13   In 2017, Plaintiffs and Defendants had a falling out.  Plaintiffs left Texas, where they lived with the Defendants for a short period, and moved to Baker City, Oregon.

2.14   In 2020, Defendants were experiencing financial difficulties, and Plaintiff Ted Cole had recently inherited a substantial amount of money from his mother.  After years of estrangement, Defendants reengaged Plaintiffs and

COMPLAINT OBJECTING TO DISCHARGE - 4

Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

eventually asked Plaintiffs (via text) to pay off Defendants $216k mortgage on their home in Texas. Plaintiffs declined to do so (according to a text from Susan, Defendants sold their home in Texas for no profit). Defendants asked for other money from Plaintiffs.

2.15   In 2022, Defendants sold their home in Texas and moved to Spokane, Washington. From the sale of their home, the Defendants paid off two judgments from American Express and Bank of America in the amount of $11,787.71 and $27,172.42, respectively, as well as an IRS tax lien in the amount of $40,755.69, and a 2016 loan from Plaintiffs.

2.16   After moving to Spokane, Defendants began ingratiating themselves with Plaintiffs. Defendants did not own a home in Spokane and had been renting ever since. Defendants visited Plaintiffs in Baker City. Eventually Defendant Eric Young attempted to take over direction of the remodel of Plaintiffs' Baker City home, in what can only be described as an effort to transform Plaintiffs home into a home for the Defendants (with the use of Plaintiffs' funds), or to prepare the home for sale (which, presumably, would ultimately benefit the Defendants).

2.17   A review of their financial accounts and credit history reveal that Defendants likely did not have the means to purchase a home, and, although in their 50s, Defendants had / have almost no retirement to speak of. But Plaintiffs did have the financial means to purchase a home. Defendants' scheme was born.

COMPLAINT OBJECTING TO DISCHARGE - 5

R | N W   Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

2.18   In April or May of 2023, upon Defendant Susan Young's advice and encouragement, Plaintiffs, while still residing in Baker City, purchased a piece of property in Spokane, County for $179,000.00.

2.19   Defendants continued to work on Plaintiffs to have them move to Spokane. Given the Defendants' financial situation, Plaintiffs eventually planned to move to Spokane, build a duplex on the property, and have the Defendants live in the other unit. This arrangement would reduce the Defendants' living expenses since the Plaintiffs would finance the duplex. And the Defendants, in turn, would help with Plaintiffs care as they continued to age.

2.20   In September of 2023, Defendants were able to ascertain what Plaintiffs' financial situation looked like. Defendants were concerned that Plaintiffs had far less money than Defendants had hoped.

2.21   As a result, Defendants began to hurry Plaintiffs movement up to Spokane, Washington. At one point, Defendant Eric Young even made a trip down to Baker City to move some of Plaintiffs' belongings without Plaintiffs' present.

2.22   Defendants then began selling the Plaintiffs on the idea of purchasing a home in Spokane, Washington, where both families could live together (Plaintiffs and Defendants, with Defendants' son / Plaintiffs' only grandson). According to the Defendants, the co-habitation agreement would benefit the elderly Plaintiffs.

2.23   In October of 2023, Defendants talked Plaintiffs into agreeing to

COMPLAINT OBJECTING TO DISCHARGE - 6

Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

purchase a home together for both families to live in instead of building a duplex on the previously purchased lot.

2.24   Defendants contacted a real estate agent on October 9, 2023, and brought the Plaintiffs to view a few houses, including the house located at 1004 E. Golden Ct., Spokane, Washington ("House").  Plaintiffs and Defendants found a home they liked on Golden Court.

2.25   After viewing the House on October 11, 2023, Plaintiffs and Defendants agreed to purchase the House together, which meant that both families would be on the title and mortgage for the home. Defendant Eric Young represented that Plaintiffs would be on the title and the mortgage of the House if Plaintiffs contributed the downpayment for the House.  Further, Defendant Eric Young would make the mortgage payments on the House until the Plaintiffs sold their home in Baker City and the lot in Spokane, at which point Plaintiffs would pay off the mortgage for the House.

2.26   Plaintiffs only agreed to move forward with this agreement because of Defendant Eric Young's representations that they would be on the title and mortgage of a house they were paying for.

2.27   The parties agreed that the Plaintiffs would live on the main floor, and the basement would be remodeled for the Defendants.

2.28   Plaintiffs believed that the Defendants were looking out for Plaintiffs'

COMPLAINT OBJECTING TO DISCHARGE - 7

R | N/W   Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

best interests.   Defendants told Plaintiffs that they would care for Plaintiffs as Plaintiffs aged.

2.29   In reality, Defendants had no intention of being co-owners of the House with the Plaintiffs.

2.30   Defendants retained a real estate agent to facilitate the viewing and purchase of the House.  The real estate agent had no idea that Plaintiffs were funding the purchase of the home, or that Plaintiffs were told by Defendants that Plaintiffs would be on the mortgage or title.  The Defendants hid all of that from the real estate agent.

2.31   Contrary to his representations to Plaintiff, only Defendant Eric Young was listed as the buyer on the purchase and sale agreement for the House.

2.32   Defendant Eric Young told Plaintiffs that he needed the down payment for the House immediately to purchase the House and created an unnecessary sense of urgency.  The down payment was not due for several weeks.

2.33   On the evening of October 11, 2023, Defendant Eric Young had Plaintiff Linda Cole sign a blank piece of paper.  Defendant Eric Young told Plaintiff Linda Cole that the signature was for a "gift letter," and that "gift letter" was necessary because the Plaintiffs' money was being transferred across state lines. Plaintiff Linda Cole never saw the "gift letter."  Plaintiff Linda Cole did not understand what the "gift letter" was.  Plaintiffs had no intention of gifting their

COMPLAINT OBJECTING TO DISCHARGE - 8

R | N W    Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

monies to Defendants.

2.34    Defendant Eric Young then affixed Plaintiff Linda Cole's signature to a "gift letter" that stated Plaintiff Linda Cole was gifting Defendant Eric Young $180,000.  Defendant Eric Young never showed Plaintiffs the "gift letter."

2.35    The next day, Defendant Eric Young initiated interactions with Plaintiff Linda Cole's bank, Old West Federal Credit Union ("Old West"), located in Eastern Oregon, to arrange to have $180,000 transferred out of Linda Cole's bank account for the down payment.  Plaintiff Linda Cole intended the money to be transferred out of her Old West account and into *her* Chase Bank account, which had a branch located in Spokane, Washington.  Plaintiff Linda Cole would then provide the down payment money to the seller via check drawn from her Chase bank account.

2.36    The Old West branch refused to carry out the transfer because the bank manager was out of town and because Plaintiff Linda Cole was not present at the bank.

2.37    Plaintiff Linda Cole became frustrated that Old West would not carry out the wire transfer and then decided to remove all her money from Old West and transfer it to her Chase bank account so she would have access to while she lived in Spokane.

2.38    Once Plaintiff Linda Cole decided to move all of her money out of Old

COMPLAINT OBJECTING TO DISCHARGE - 9

R | N/W   **Riverside NW Law Group, PLLC**
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

West Bank (one account held $242,314.62, and another account held $119,698.04) Defendant Eric Young changed the "gift letter" from $180,000 to $242,314.62 without Plaintiff Linda Cole's knowledge.

2.39    Defendant Eric Young then entered into the purchase and sale agreement on October 13, 2023, for the House.  The downpayment was actually only $123,000.

2.40    That same day, Defendant Eric Young began calling other Old West branches to determine if someone would be willing to carry out the transfers without Plaintiff Linda Cole present.    Defendant Eric Young found a manager at the LaGrand, Oregon branch who was willing to do the transfer.

2.41    Defendant Eric Young added Plaintiff Linda Cole to a call he initiated with Old West's LaGrand, Oregon branch.  Plaintiff Linda Cole was on the phone briefly and then got off the phone call to write down her Chase bank account number and gave it to Defendant Eric Young so he could complete the transfers to her Chase bank account.  Plaintiff Linda Cole intended the money to be transferred to her Chase bank account. Defendant Eric Young had different plans.

2.42    Defendant Eric Young cut Plaintiffs out of any further communication with Old West.

2.43    Defendant Eric Young had the bank identify him as the beneficiary of both bank transfers and list his personal bank account as recipient bank for the wire

COMPLAINT OBJECTING TO DISCHARGE - 10

R | NW    Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

transfers.  Plaintiffs were not aware of this fact.

2.44   Old West emailed the wire transfer documentation to Plaintiff Linda Cole's email address.  Defendant Eric Young accessed Plaintiff Linda Cole's email and forwarded the forms to his own email.  Defendant Eric Young then printed off the documents, or some portion of them.

2.45   Old West required that both the wire transfer document and a document called the "Indemnification and Hold Harmless Agreement" be signed by Plaintiff Linda Cole and notarized.

2.46   On October 14, 2023, Defendant Eric Young drove Plaintiff Linda Cole to a notary but only presented the Indemnification and Hold Harmless Agreement to the notary and Plaintiff Linda Cole for signature and notarization. Plaintiff Linda Cole signed both copies of the Indemnification and Hold Harmless Agreement for each wire transfer Defendant Eric Young never presented Plaintiff Linda Cole or the notary with the first page of the wire transfer forms (which also must be signed) that showed he was the named beneficiary of the wire transfers and that Plaintiffs' money would be wired directly into his own bank account. Defendants hid this page from Plaintiffs. Plaintiff Linda Cole never signed the first page of the wire transfer forms.

2.47   Defendant Eric Young forged Plaintiff Linda Cole's signature on the first page of both wire transfer documents and then emailed the completed packets

Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

to Old West Bank on October 16, 2023. Plaintiff Linda Cole was not included on Defendant Eric Young's emails to Old West delivering the "executed" forms.

2.48    As intended, Old West wired $242,314.62 and $119,698.04 in two wires to Defendant Eric Young's personal bank account.

2.49    Defendants had no intention of having Plaintiffs listed on the title or on the mortgage on the House.

2.50    Defendants made false representations to Plaintiffs, including, but not limited to:

2.50.1.1    Plaintiffs would be listed on the title and on the mortgage of the House;

2.50.1.2    Plaintiffs needed to sign a "gift letter";

2.50.1.3    The down payment was $180,000 (instead of the actual $123,000);

2.50.1.4    That only the "Indemnification and Hold Harmless Agreement" needed to be signed by Plaintiff Linda Cole before a notary.

2.51    Defendants made these representations, knowing them to be false at the time these representations were made in order to convert / divert Plaintiffs funds for their own use.

2.52    Plaintiffs relied upon Defendants false representations about when taking the actions described above, including participating in the wire transfer process, signing a blank piece of paper (Plaintiffs never intended to "gift" the funds

COMPLAINT OBJECTING TO DISCHARGE - 12

R | NW    Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

to Defendants), and signing the Indemnification and Hold Harmless Agreement."

2.53   Plaintiffs would not have taken any of these actions if Plaintiffs knew that Defendants never intended to include Plaintiffs on the title or mortgage for the House, or that Defendants would convert Plaintiffs monies by having the monies wired directly to Defendants' bank account.

2.54   Plaintiffs had the right to rely on these representations, as they were made by their own family members.

2.55   Plaintiffs have sustained a loss as a proximate result of Defendants' false representations / omissions.

2.56   As soon as the money hits his bank account, Defendant Eric Young began moving the money to different financial accounts he held.   Defendants immediately began using Plaintiffs' money to pay off personal debt and to live on.

2.57   According to the testimony of Virginia Tate, a forensic accountant, just before October 2023, the Defendants were running at a financial deficit every month due to their lifestyle.

2.58   According to Ms. Tate, just prior to the October 16, 2023, transfers, the Defendants had $32.02 in their Bank of America checking account, $276.71 in their Bank of America business account, and $5,619.05 in all of Defendant Eric Young's Fidelity account.   Defendants needed Plaintiffs' money just to stay afloat.

2.59   Around this period, and because Plaintiffs would surely find out,

COMPLAINT OBJECTING TO DISCHARGE
- 13

Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Defendants told Plaintiffs that the wire transfers had "accidentally" been deposited into Defendant Eric Young's bank account.

2.60   On October 19, 2023, at 12:32 a.m., Defendant Eric Young submitted his mortgage application listing the $242,31.62 as a "gift" from a relative.

2.61   On October 20, 2023, Defendants and Plaintiffs discussed the "accidental" deposit of the monies into Defendants' bank account.  Plaintiff Linda Cole recorded the conversation.  On October 21, 2023, Defendants and Plaintiffs again discussed the issue, but this time, Defendants recorded the conversation.  During these conversations, Plaintiff Linda Cole requested the return of the money and stated Plaintiffs wanted out of the previously agreed arrangement.

2.62   Defendants engaged in extraordinarily manipulative tactics during both conversations.  The Defendants relied upon emotional manipulation, pointing out Plaintiff Linda Cole's medical issues, the fact she needed someone to take care of her, and even utilizing Plaintiffs' grandson as a weapon ("does your grandson mean nothing to you."). Defendant Susan Young told Plaintiff Linda Cole "[t]his – whole thing about the title and of that that is ridiculous."

2.63   One portion of the conversation on October 20, 2023, is particular disturbing:

> Eric: "It's all sitting and earning interest as it should be."
>
> Linda: "Is that the money that came from the Old West?"

COMPLAINT OBJECTING TO DISCHARGE - 14

R | N/W   Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Eric: "All of it."

Ted: "Okay."

Eric: "All those funds are in a pool."

Linda: "That the girl was supposed to put in our account."

Eric: "It doesn't matter."

Linda: "No, just a minute."

Eric: " It doesn't matter."

2.64   Defendant Susan Young also relied on religion as a form of manipulation, telling Plaintiff Linda Cole that the Great Tribulation was coming, that soon people would be hunting them down with guns, and money would be "worthless." Defendant Susan Young told Plaintiff Linda Cole "[t]his – whole thing about the title and all of that is ridiculous."  Defendant Eric Young told Plaintiff Linda Cole to "sacrifice what you have to sacrifice," and to "give what you can give and what you have to give."  Defendant Eric Young stated, "You need to get important in your mind the more important things.  This is scriptural."  At one point Linda Cole stated, "[m]y main thing is my dedication to Jehovah God," to which Defendant Eric Young stated, "[s]o, here's your opportunity."

2.65   Defendant Eric Young engaged in aggressive and condescending tactics during these conversations.

2.66   Defendant Eric Young told Plaintiff Linda Cole that she should be thankful that she can "let go of the reigns" and allow him to manage the money,

COMPLAINT OBJECTING TO DISCHARGE
- 15



Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

that based on all the turmoil Plaintiff Linda Cole has caused that the "accidental" transferring of the money to his account "turned out to be the best thing," and that Plaintiffs should show Defendant Eric Young gratitude for all he is doing for them.

2.67 When Plaintiff Linda Cole demanded a copy of all the paperwork for the house, including a copy of the "so called gift letter," Defendant Eric Young responded, "you get nothing" because "[you] have not right … absolutely none, at this moment you have no right to demand anything."

2.68 On October 20, 2023, Plaintiff Linda Cole moved the remaining money out of her Chase bank account because Defendants had the account numbers. Plaintiff Linda Cole also made a panicked and frantic phone call to the real estate agent for the house. The real estate agent told Plaintiff Linda Cole that she would not be included on the title for the home.

2.69 Plaintiff Linda Cole asked the real estate agent to rescind the purchase and sale agreement but the real estate agent said she could not do that because Plaintiffs were not parties to the contract.

2.70 On October 26, 2023, Plaintiff Linda Cole sent a text message to Defendant Susan Young demanding the return of all the money.

2.71 Defendant Susan Young responded by stating "if you desire the gift funds to be repaid, we can do that, but it constitutes mortgage fraud and is a felony which can incur a fine and prison time. That's why Eric has said repeatedly, [sic]

R|NW  Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

once the mortgage paperwork kicked off, things were in motion and irrevocably proceeding."

2.72   On October 30, 2023, Plaintiff Linda Cole again sent a text message to Defendant Susan Young asking for the return of the money.

2.73   This test message read: "Good afternoon, Dad and I just wanted to make sure know that we have changed our minds about buying the house and moving to Spokane with you.  We know that you will be disappointed by our decision, and for that we are sorry.  We don't feel that our families living together is in the best interest of either family.  We would like all the money that Eric transferred out of our bank account.  The $242,324.63 and the $119,698.04 that you both said was accidentally deposited into your own account by the bank. The total amount is $362,012.66.  Yes, we are aware that Eric made me sign a blank piece of paper so that he could type up a gift letter to be able to acquire the mortgage loan."

2.74   The same day, the Plaintiffs, through counsel, sent a letter to the Defendants and to the real estate agent demanding a return of the money.

2.75   On November 3, 2023, a second letter was sent to the real estate agent notifying her of the dispute over the funds the Defendants intended to use for the purchase of the home.

2.76   The Plaintiffs sued the Defendants in the State Court Case on November 6, 2023, for Fraud, Conversion, and injunctive relief relating to the

COMPLAINT OBJECTING TO DISCHARGE - 17

Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Defendants wrongfully obtaining over $362k from the Plaintiffs.

2.77   Sometime after Plaintiffs filed suit, Defendant Eric Young sent Plaintiff Linda Cole two disappearing messages telling Plaintiffs to cease their legal action, and that the "court result is not going to go well for you mom." Plaintiffs took this message as a threat.

2.78   On November 8, 2023, the Plaintiffs obtained a temporary restraining order against the Defendants in which the Court ordered that $280,000 of the Plaintiffs' monies that had not yet been spent, be frozen in the Defendants' Fidelity investment account until a future hearing on the matter. Between October 16, 2023, and November 8, 2023, Defendants had spent nearly $82,000 of Plaintiffs' monies, of which only $6,000 was used for the House (an earnest money payment).

2.79   On February 2, 2024, the Plaintiffs obtained a preliminary injunction against the Defendants. Judge High-Edward ordered the Debtors to turn over all the frozen monies held by the Defendants to the Plaintiffs' then counsel, Michael Merritt, by February 6, 2024. The Defendants were also ordered to provide an accounting for the approximately $82,000 of the Plaintiffs' money the Defendants already spent.

2.80   The Defendants willfully disobeyed Judge High-Edward's February 2, 2024, order. The Plaintiffs brought a motion for contempt, and on February 14, 2024, Judge High-Edward ordered the Defendants to transfer the money to the

COMPLAINT OBJECTING TO DISCHARGE
- 18

R|NW   Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Plaintiffs counsel's trust account and provide a full accounting within 24 hours. Defendants sent a check for $119,698.04 directly to Plaintiffs instead of providing the money to Plaintiffs' counsel.

2.81   The Defendants failed to comply again with Judge High Edward's February 14, 2024, order. On February 20, 2024, Judge High-Edward entered an order: (1) finding the Defendants "provided a self-created accounting of the funds showing that they were negative $50,000.00,"; (2) the Defendants provided only $119,000 to the Plaintiffs; and (3) the Defendants' failure to account for the money was "intentional and in bad faith."

2.82   The truth about the Defendants' use of the Plaintiffs' funds came to light on February 22, 2024. Defendants admitted to purchasing an RV for $82,799.20 with the Plaintiffs' money on February 14, 2024, and failed to account for the remaining funds. On that day, the Court ordered the following:

> IT IS SO ORDERED that:
>
> The court will freeze any use, removal, or inspection of the RV at Secure-It Self Storage at North point 8908 N. Nevada, Spokane, WA 99208, Slot #181 by the Youngs. The Youngs shall turn over all keys and ownership paperwork to the RV to their counsel by noon today. Counsel for the Coles, Michael Merrit has the authority to move the RV to a storage unit of the Coles' choice. The Coles shall pay the storage fees until resolution when they can ask for reimbursement of those fees.

2.83   The Court also ordered that it would consider incarceration if the

R|NW   Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Defendants "continued intransigence and blatant violation of the court's order."

2.84  On February 23, 2024, Defendants admitted to spending more of Plaintiffs monies in violation of the Corut's order ($8,000 on motorcycles) and failed to provide an accurate accounting.  Judge High-Edward issued a bench warrant for Defendant Eric Young. Defendant Eric Young was incarcerated for almost three weeks.

2.85  On March 13, 2024, Defendant Susan Young "found" a $24,000 cashiers check at their apartment, and the Court ordered Defendant Eric Young to endorse the cashier's check so it could be placed in a trust account.

2.86  Unbelievably, at the time of trial before the State Court, all that remained of Plaintiffs' $242,334.62 was $24,000 in cash (held in trust) and an RV originally worth $82,799.20.  Defendants spent the remaining money ($129,515.42).

2.87  According to Ms. Tate, the forensic accountant, between October 16, 2023, and February 28, 2024, the Defendants had moved the disputed money between different accounts more than 50 times and conducted over 100 stock transactions.

2.88  A bench trial was held on January 13-16, 2025.  Judge High-Edward entered Findings of Fact and Conclusions of Law on March 10, 2025.

2.89  Judge High-Edward found, among other things, that:

- The Defendants converted $242,314.62 (after already returning $119,000) from the Plaintiffs.

COMPLAINT OBJECTING TO DISCHARGE - 20

R | NW  **Riverside NW Law Group, PLLC**
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

- To convert the money, the Court found it "more likely than not, Mr. Young affixed Ms. Cole's electronic signature to the wire transfer forms" to have $362k wired from Plaintiff Linda Cole's bank account (located in Oregon) directly into Defendant Eric Young's bank account (located in Washington).

2.90   The State Court Order includes the following:

> The Coles are awarded the $24,000 in their attorney's trust account, title to the RV, and a judgment of $129,515.42. The Coles are awarded prejudgment interest (12%) on the wrongfully withheld $119,698.04 from October 16, 2023, until February 14, 2024. The Coles are awarded prejudgment interest (12%) beginning October 26, 2023, and post judgment interest (12%) on the remaining amount, $129,515.42. This judgment is to be paid within 30 days. If not paid, it may be reduced to a judgment without notice to Mr. and Mrs. Young.

### III.   FIRST CAUSES OF ACTION

### (Non-Dischargeability / False Pretenses, False Representations, Actual Fraud / 11 U.S.C. § 523(a)(2)(A))

3.1   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

3.2   Defendants obtained money by false pretenses, false representations, and actual fraud under 11 U.S.C. § 523(a)(2)(A) such that the debt is nondischargeable.

3.3   Defendants made false representations of material facts, fraudulent and material omissions, and engaged in false, fraudulent, and deceptive conduct and

COMPLAINT OBJECTING TO DISCHARGE - 21

Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

schemes. Defendants did so with intent to deceive and did deceive Plaintiffs.

3.4    Defendants intentionally engaged in a scheme to deprive or cheat, and to intentionally defraud Plaintiffs, of their money. Defendants made such false representations and omissions, and pursued such scheme, with fraudulent intention and purpose of inducing Plaintiffs to rely on the same.

3.5    Such actions and omissions, including knowingly false representations, were deliberate, intentional, and made with reckless disregard of the facts.

3.6    Defendants knew and had actual knowledge of the falsity and deceptiveness of their statements, omissions, and conduct. Defendants' false pretenses and representations were knowingly false and fraudulently made and the same gave rise to Plaintiffs' actions relating to the transfer of Plaintiffs' monies.

3.7    Plaintiffs relied on false representations, omissions, and conduct of Defendants.

3.8    Such reliance by Plaintiffs on the false representations, omissions, and conduct of Defendants was justifiable and reasonable.

3.9    Plaintiffs have sustained a loss and damage as a direct result of the foregoing.

3.10    The debt owned to Plaintiffs is non-dischargeable as debt for money and property.

R | N/W    Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

3.11   Defendants' false representations made in the application excepts the debt owed to Plaintiffs from discharge as provided by 11 U.S.C. § 523(a)(2).

## IV.   SECOND CAUSE OF ACTION

**(Non-Dischargeability / embezzlement or larceny / 11 U.S.C. § 523(a)(4)(A))**

4.1   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

4.2   Defendants embezzled funds from Plaintiffs as, and to the extent, Defendants initially acquired the funds lawfully and/or was entrusted with funds; Plaintiffs entrusted funds to Defendant, funds that Defendants lawfully obtained originally, that they caused to be misappropriated, used or consumed, for purposes other than that for which the money was entrusted and did so with fraudulent and wrongful intent to steal and permanently deprive Plaintiffs of money.

4.3   Defendants had knowledge that the appropriation was contrary to the wishes of Plaintiffs and the purpose for which Plaintiffs transferred the money. Specifically, without limiting the generality of the foregoing, Defendants had knowledge that the funds from Plaintiffs were intended.

4.4   To the extent Defendants came into the possession of the monies from Plaintiffs wrongfully and unlawfully, the actions and omissions of Defendants constitute larceny, as Defendants wrongfully and unlawfully took and caused to be taken funds from Plaintiffs, without their consent, and did so with fraudulent and

COMPLAINT OBJECTING TO DISCHARGE - 23

R | NW   **Riverside NW Law Group, PLLC**
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

felonious intent, including without limitation, the intent to convert and steal the same for their own unauthorized purposes and to deprive Plaintiffs of the money. Such misappropriation was accompanied by Defendants deception and/or intentional misrepresentation, among other wrongful conduct.

4.5    As a direct and proximate cause of the embezzlement and/or larceny of Defendants, Plaintiffs have incurred loss and damages in an amount to be determined according to proof at the time of trial.  The debt owned to Plaintiffs is non-dischargeable as a debt for embezzlement and/or larceny within the meaning of Bankruptcy Code § 523(a)(4).

## V.    THIRD CAUSE OF ACTION

### (Non-Dischargeability / Willful and Malicious Injury / 11 U.S.C. § 523(a)(6)

5.1    Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

5.2    Defendants acted willfully and maliciously injuring Plaintiffs, resulting in damages to Plaintiffs in an amount to be proven at trial.

5.3    The injury to Plaintiffs was willful.  The injury to Plaintiffs was deliberate and intentional.  Defendants desired the consequences of their intentional actions and omissions – damages and financial harm to Plaintiffs by diversion / obtaining Plaintiffs funds and the expenditure of funds after the State Court ordered Defendants not to spend the money and to turn said money over to Plaintiffs'

COMPLAINT OBJECTING TO DISCHARGE
- 24

R | N/W    Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

counsel – was substantially certain that such consequences of their intentional actions or omissions were substantially certain to occur. Defendants had a motive to inflict injury to Plaintiffs.

5.4    Defendants knew they had no right to Plaintiffs' monies, and further, knew Plaintiffs sought the return of the monies. Defendants were aware of the Court's orders prohibiting the expenditure and return of Plaintiffs' monies. Defendants knew that their actions and omissions, including without limitation, diverting funds, failing to surrender funds, conversion, and then spending down / wasting Plaintiffs' monies in violation of court orders, would cause injury and damages to Plaintiffs.

5.5    The injury to Plaintiffs was malicious. It was wrongful, intentional, and without just cause or excuse. The injury to Plaintiffs involved wrongful acts by Defendants done deliberately and intentionally, which necessarily causes and caused injury.

5.6    Defendants acted wrongfully and tortiously injuring Plaintiffs. The tortious actions and omissions of Defendants, including, without limitation, diverting funds, failing to surrender funds, conversion, and then spending down / wasting Plaintiffs' monies in violation of court orders, were willful and malicious, and gave rise to willful and malicious injury be Defendant to Plaintiff.

5.7    As a direct and proximate result of the willful and malicious injury by

COMPLAINT OBJECTING TO DISCHARGE - 25

R | N/W   Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Defendants to Plaintiffs, Plaintiffs have incurred loss and damages in an amount to be determined according to proof at the time of trial. The debt owed to Plaintiffs is non-dischargeable as a debt for willful and malicious injury to Plaintiffs caused by Defendants within the meaning of Bankruptcy Code § 523(a)(6).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants, jointly and severally, and on behalf of their marital community:

1. For an order of judgment in favor of Plaintiffs against Defendants, debtors in the Underlying Case, declaring the debt Defendants owe to Plaintiffs is non-dischargeable in bankruptcy pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) and excepting from discharge such debt;

2. For an order of Judgment awarding Plaintiffs the damages the State Court awarded to Plaintiffs, including a Judgment, complying with RCW 46.29.270 and RCW 46.29.310 to transfer ownership of the RV. The ownership of the RV has been decided by the State Court, as has ownership of the $24,000, prior to Defendants filing of either its first or second bankruptcy filing;

3. That Defendants debt to Plaintiffs be reduced to a Judgment to include Plaintiffs damages, plus interest thereon at the applicable rate, plus costs and fees;

4. That Plaintiffs may have such other and further relief as may be proper and equitable in the premises.

COMPLAINT OBJECTING TO DISCHARGE - 26

R | N/W
Riverside NW Law Group, PLLC
905 W. Riverside Ave, Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Dated September 15, 2025     RIVERSIDE NW LAW GROUP, PLLC

BY: */s/ Matthew S. Mensik*
Mathew A. Mensik, WSBA 44260
905 W. Riverside Ave. Ste. 208
Spokane, WA 99201
Telephone: (206) 949-3540
Email: mam@rnwlg.com

COMPLAINT OBJECTING TO DISCHARGE
- 27

R | N W   Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

# APPENDIX A



**SUPERIOR COURT OF WASHINGTON COUNTY OF SPOKANE**

LINDA and TED COLE

          Plaintiff,

vs.

ERIC and SUSANANN YOUNG

          Defendants.

**CASE NO. 23-2-04734-32**

**FINDINGS OF FACT and CONCLUSIONS OF LAW**

**[ ] Clerk's Action Required**

       Linda and Ted Cole filed this lawsuit against Eric and Susanann Young for fraud and conversion.  A bench trial occurred from January 13, 2025, until January 16, 2025. The court heard testimony from Linda Cole, Eric Young, Susanann Young, Virginia Tate, Matthew Anderson, and Rebecca Flaherty.  Plaintiffs' exhibits 1-6, 8-11, 12 (pages 1-22), and 13-51 were admitted.  Defendants' exhibits 102, 104 (pages 180-185), 110 (pages 469-470, 500-502, 450, 452-453, 456, 462, 477, 478, 481, 485), 113 (pages 1245-1250), 115 (pages 810-815, 817), and 116 were admitted.  Defendants' proposed exhibit 119 was rejected.

       Based on the testimony and exhibits admitted during trial, the court makes the following findings of fact and conclusions of law:

       1.      Linda Cole is Susanann Young's mother.

23-2-04734-32 FPO    Doc 95    Filed 09/05/25    Entered 09/05/25 08:58:36    Pg 50 of 65

2.        Ted Cole is Susanann Young's stepfather.

3.        Linda and Ted Cole are 80 and 83 respectively.

4.        Eric Young is Suanann Young's husband.

5.        JY is Eric and Susanann Young's son and Linda and Ted Cole's only grandchild.

6.        Both families are active members in the church of Jehovah.

7.        Linda and Ted Cole own a house in Baker City, Oregon.

8.        Eric and Susanann Young rent a home in Spokane, Washington.

9.        The parties have had an on-again, off-again relationship from the time Ms. Young turned 18 years old.  Testimony of L. Cole, S. Young, and E. Young.

10.      There were times when the parties would go years without communicating. Testimony of L. Cole, S. Young, and E. Young.

11.      At other times the parties would be close and would live together or near each other.  Testimony of L. Cole, S. Young, and E. Young.

12.      The Youngs believe that the problem with their relationship with the Coles stems from Ms. Cole's behavior.  Testimony of S. Young and E. Young.

13.      The Youngs believe that they have provided for the Coles both financially and emotionally throughout the years and that Ms. Cole's narcissistic behaviors causes friction. Testimony of S. Young and E. Young.

14.      The Coles believe that the Youngs have taken advantage of them in the past, one time trying to convince the Coles to transfer their social security retirement income to the Youngs' bank account to manage.  Testimony of L. Cole.

15.      While the history between the parties is long and often conflicting, for purposes of this case the court will rely only on the history relevant to this case.

16.      In 2010, when the parties both lived in Texas, they purchased a lot together in a housing development.  Testimony of L. Cole and E. Young.

17.     While the plan was for Mr. and Ms. Cole to build a house on the lot, that plan did not come to fruition.  Testimony of L. Cole.

18.     After discord occurred between the parties, the Coles left Texas.  Testimony of L. Cole.

19.     Eventually, the lot in Texas went into arrears for the past due homeowners' dues and property taxes.  Testimony of L. Cole.

20.     When this occurred, the Youngs took their name off the title, leaving the Coles as the sole owners.  Testimony of L. Cole and E. Young.

21.     To get out from the arrears, the Coles ultimately surrendered the lot back to the developer.  Testimony of L. Cole.

22.     During a period of reconciliation, on June 4, 2016, the Coles lent the Youngs $6,800.00 to be paid back in 60 days.  Exhibit P-1, p.1; Testimony of L. Cole and E. Young.

23.     In early 2020, Mr. Cole inherited between $1.4 to $1.5 million dollars after his mother passed away.  Testimony of L. Cole.

24.     The Coles had anticipated this inheritance because Mr. Cole was granted the inheritance upon his stepfather's death, but it was not to be paid until his mother passed away. Testimony of L. Cole.

25.     The Youngs also knew that Mr. Cole would inherit money once his mother died. Testimony of L. Cole.

26.     With the inheritance, Mr. and Ms. Cole purchased a home in Baker City Oregon and planned a large remodel project.  Testimony of L. Cole.

27.     On September 21, 2021, after a period of estrangement and little communication for a year and a half, Ms. Young sent Ms. Cole a text message asking Ms. Cole to pay off the Young's mortgage on their home in Texas.  Exhibit P-2, p. 9-11; Testimony of L. Cole and S. Young.

28. The mortgage was approximately $216,000.00. Exhibit P-2, p. 9-11. Testimony of S. Young.

29. During this time, the Youngs were experiencing financial issues and Ms. Young believed that "a typical mother would want to do" everything they can to help their children. Testimony of S. Young.

30. Ms. Cole did not respond to the text message. Testimony of L. Cole and S. Young.

31. In 2022, the Youngs sold their home in Texas and moved to Spokane, Washington so JY could attend St. George's School. Testimony of S. Young and E. Young.

32. From the sale of their home, the Youngs paid off two judgments from American Express and Bank of America in the amounts of $11,787.71 and $27,172.42, respectively as well as an IRS tax lien in the amount of $40,755.69, and the 2016 loan from the Coles. Testimony of E. Young; Exhibit P-1, p.2.

33. During this time of the parties' estrangement, the Coles became very good friends with a family in their church in Baker City, Mark and Joelle Sverns. Testimony of L. Cole.

34. In 2021, Mr. and Ms. Cole executed a will that left their estate to Mark and Joelle Sverns. Testimony of L. Cole.

35. The parties reconciled sometime between 2021-2023. Testimony of S. Young, L. Cole, and E. Young.

36. As their reconciliation with the Youngs continued and they began thinking of moving to Spokane, the Coles changed their will in 2022 and named the Youngs as their beneficiaries. Testimony of L. Cole.

37.     In April or May 2023, upon Ms. Young's advice and encouragement, the Coles, while still residing in Baker City, purchased a piece of property in Spokane for $179,000.00. Testimony of L. Cole and S. Young.

38.     The Coles planned to move to Spokane, build a duplex on the property, and have the Youngs live in the other unit.  Testimony of L. Cole, S. Young, and E. Young.

39.     This would result in the Youngs being nearby if Mr. and Ms. Cole needed care or help and would significantly reduce the Young's living expenses since Mr. and Ms. Cole would finance the duplex. Testimony of S. Young, E. Young, and L. Cole.

40.     In May 2023, Ms. Cole discovered that the Youngs were behind in tuition payments to St. George's School.  Testimony of L. Cole.

41.     Wanting to help, Ms. Cole wrote the Youngs a check for $12,000.00 for JY's school tuition.  Exhibit P-4, p.2.

42.     Between August and October 2023, the Coles began moving their belongings to Spokane, Washington and lived between their home in Baker City and the Young's home in Spokane.  Testimony of L.  Cole, S. Young, and E. Young.

43.     On September 22, 2023, upon inquiry, Ms. Young was able to get Ms. Cole to tell her what Mr. and Ms. Cole's financial situation looked like.  Exhibit D-110, p. 469-470.

44.     A text between Mr. and Ms. Young on September 22, 2023, stated:

S. Young: "1.4/5 million dollars/ that she doesn't remember .."

E. Young: "Then. Because he is about to be broke again"

S. Young: "And now?  They have this …

[S. Young sends a picture with handwriting]

Old West

Saving Checking - $20,373.28

Saver Savings - $242,309.79

Money Market - $99,317.49

Primary share - $22.78

_____

~~Acct?~~     $362,023.34

~~Routing?~~

    E. Young: "And she was thinking about writing Jose a $350k check … good grief"

    S. Young: "Oh but it's ok … because she has plenty put aside for them to live on in their old age.  How much?  Her: enough"

    E. Young: "And where is that?"

    S. Young: "I finally, between dad and I, got her to show me the account."

    S. Young: "Chase."

    S. Young: "Know how much their nest egg is that she thinks she's going to live on?"

    S. Young: "Guess …"

    E. Young: "$50k"

    S. Young: "$69k"

    E. Young: "Good grief."

    S. Young: "Oh but that is the nontouchem [sic] account"

    S. Young: "Except she paid some construction out of there."

    E. Young: "So they have about $2300/mo in income from SS and her little pension"

Exhibit D-110, p. 469-470.

    45.    On October 7, 2023, the parties agreed that it would be best to purchase a home for both families to live in instead of building a duplex.  Testimony of E. Young.

46.     According to Ms. Cole, the parties agreed to purchase the home together, which meant that both families would be on the title and mortgage for the home.   Testimony of L. Cole.

47.     Ms. Cole believed once they sold their home in Baker City and the lot in Spokane, Mr. and Ms. Cole would pay off the mortgage to the new home.  Testimony of L. Cole.

48.     Until this time, the Youngs would make the mortgage payments.  Testimony of L. Cole and E. Young.

49.     Ms. Cole believed it would benefit the Youngs because once the mortgage was paid off, they would not have a house payment and because both families were on the title, the home would automatically go to the Youngs upon the Coles' deaths.  Testimony of L. Cole.

50.     According to Mr. Young, the Coles agreed to pay the down payment plus extra money to help lower his debt-to-income ratio, so he could qualify for a mortgage, that only he would be on the mortgage and title, and that the home would be placed in trust for the benefit of the Coles and the Youngs.  Testimony of E. Young.

51.     Mr. Young arranged for the parties to look at homes with real estate agent, Rebecca Flaherty, on October 11, 2023.  Testimony of R. Flaherty and E. Young.

52.     The parties found a home they liked on Golden Court.  Testimony of L. Cole, S. Young, and E. Young.

53.     Parties agreed that the Coles would live on the main floor and that the basement would be remodeled for the Youngs.  Testimony of L. Cole, S. Young, and E. Young.

54.     Later that evening, in anticipation of the offer on the Golden Court home, Mr. Young had Ms. Cole sign a gift letter indicating that she agreed to gift Mr. Young $180,000.00. Exhibit P-23; Testimony of E. Young.

55.     At the time, Mr. Young told Ms. Young that the downpayment was $180,000.00 and that the gift letter was necessary because the money was being transferred across state lines.  Testimony of L. Cole.

56.     Ms. Cole testified that Mr. Young presented her with a blank piece of paper to sign.

57.     Mr. Young testified that he obtained Ms. Cole's electronic signature on the gift letter by having Ms. Cole signed her name with her finger on his tablet.

58.     On October 12, 2023, Mr. Young initiated a call to Ms. Cole's bank, Old West Bank, to arrange to have the $180,000.00 transferred.  Testimony of L. Cole and E. Young.

59.     Ms. Cole was connected to the phone call while it was in progress.  Testimony of L. Cole and E. Young.

60.     The Old West Bank branch in Baker City refused to conduct the transfer because their bank manager was out of town and because Ms. Cole was not present at the bank. Testimony of E. Young.

61.     Frustrated that the bank would not do the wire transfer, Ms. Cole decided to remove all her money from Old West Bank and transfer it to her Chase bank account so she and Mr. Cole could have access to it in Spokane.  Testimony of L. Cole.

62.     Once Ms. Cole decided to move all her money out of the Old West Bank, Mr. Young changed the gift letter from $180,000.00 to $242,314.62 without Ms. Cole's knowledge. Testimony of E. Young.

63.     Eric Young entered into a purchase and sale agreement on October 13, 2023, for the Golden court home.  Exhibit P-9.

64.     The downpayment was $123,000.00 with a 30-day closing date.  Testimony of Rebecca Flaherty.

65. On the same day, Mr. Young began calling other Old West Bank branches to see if someone would be willing to do the transfer without Ms. Cole present. Testimony of E. Young.

66. Ultimately, Mr. Young found Dawn Bruce from the LaGrand, Oregon branch who was willing to do the transfer. Testimony of E. Young.

67. After Mr. Young found Ms. Bruce, he included Ms. Cole on the phone call. Testimony of L. Cole.

68. Ms. Cole then wrote down her Chase bank account number and gave it to Mr. Young so he could complete the wire transfer. Testimony of L. Cole and E. Young.

69. After the phone conversation, Ms. Bruce emailed Ms. Cole stating "[a]fter speaking with you and Eric, attached are the wire requests. … Once I receive signed wire forms back, I will get them sent out." Exhibit P-25.

70. Three documents were attached to Ms. Bruce's email: (1) balance transfer wire; (2) property wire; and (3) share membership closure. Exhibit P-25, p. 2.

71. Of importance, the balance transfer wire and the property purchase wire both contained three pages. Exhibit P 26.

72. On page one of the balance transfer wire, the amount listed was $119,698.04, Mr. Young was listed as the beneficiary with the funds being wired to a Bank of America account ending 2131 and had a member signature line that Ms. Bruce highlighted in purple. Exhibit P-26, p. 4.

73. Page two of the balance transfer wire contained boilerplate language entitled "Old West Wire Transaction Disclosure." Exhibit P-26, p. 5

74. Page three of the balance transfer wire contained the wire instructions, indemnification and hold harmless agreement (hold harmless agreement) and Ms. Bruce again highlighted the signature line in purple. Exhibit P-26, p. 6.

75.     Page one of the property purchase wire transferred $242,314.62 from Ms. Cole's account for "property purchase in Spokane, WA," listed Mr. Young as the beneficiary with the funds going into a Bank of America account ending 2131 and had a member signature line that Ms. Bruce highlighted in purple   Exhibit P-26, p. 8.

76.     Page two of the property purchase wire was the boilerplate "Old West Transaction Disclosure."  Exhibit P-26, p. 9.

77.     Page three of the property purchase wire contained the wire instructions, indemnification and hold harmless agreement (hold harmless agreement) and Ms. Bruce had again highlighted the signature line in purple.  Exhibit P-26, p. 10.

78.     This email was forwarded to Mr. Young's email address the same day.  Exhibit P-26.

79.     Mr. Young testified that he and Ms. Cole sat next to each other and forwarded the email from her to him, but Ms. Cole denied this and denied ever seeing the email. Testimony of L. Cole and E. Young.

80.     Mr. Young testified that he and Ms. Young had access to Ms. Cole's email at this time.

81.     On October 13, 2023, Mr. Young noticed that the balance transfer wire forms accidentally deposited the $119,698.04 to his Bank of America account ending 2131 instead of Ms. Cole's Chase bank account.  Testimony of E. Young.

82.     Mr. Young testified that he told Ms. Cole about the mix up on October 14, 2023 and that they would work it out later.

83.     On October 14, 2023, the Youngs took Ms. Cole to the notary.  Testimony of L. Cole and E. Young.

84.     Mr. Young testified multiple times that Ms. Bruce told him that page one of each wire transfer form did not need to be signed and only page three of each wire transfer form (hold harmless) needed to be signed and notarized.

85.     The notary, Matthew Anderson, testified that he notarized two identical, one-page hold harmless agreements for Ms. Cole on October 14, 2023, at 11:28 a.m. and that he was presented no other documents.

86.     Mr. Young disputes Mr. Anderson's testimony and alleges that all three pages of each wire transfer form were presented to Mr. Anderson, but that Mr. Anderson set aside the first two pages of each document.  Testimony of E. Young.

87.     Immediately after signing the hold harmless agreements with the notary, Ms. Young and the Coles left for Baker City.  Testimony of L. Cole and S. Young.

88.     According to Mr. Young, Ms. Cole then signed page one of both wire transfer forms with Ms. Young on October 15, 2023.  Testimony of E. Young.

89.     While Ms. Cole agrees that her signature is on the wire transfer forms, she denies ever signing the wire transfer forms.  Testimony of L. Cole.

90.     In the early morning of October 15, 2023, Ms. Young drove from Baker City to Spokane because Mr. Young and JY had been in a kayaking accident the day before and lost the keys to the truck and Mr. Young's wallet.  Testimony of S. Young.

91.     On October 16, 2023, Mr. Young emailed both signed wire transfer forms back to Ms. Bruce and the funds were wired to Mr. Young's Bank of America account ending 2131.  Exhibit P-30; Exhibit P-21, p. 53-56.

92.     The same day, Ms. Young told Ms. Cole that the money had been accidentally transferred to Mr. Young's account instead of Ms. Cole's Chase bank account.  Testimony of L. Cole and S. Young.

93.    Ms. Cole testified that she "knew at that time that we had been taken then and there."  Testimony of L. Cole.

94.    Ms. Cole, who was still in Baker City, along with Joelle Svern, went to the police station and reported that Ms. Young had impersonated Ms. Cole and taken her money. Testimony of L. Cole.

95.    Ms. Young returned to Baker City on October 17, 2023.  Testimony of S. Young.

96.    According to Mr. Young, that day, Ms. Cole started "freaking out" about the wire transfers going into Mr. Young's account.  Testimony of E. Young.

97.    Mr. Young, Ms. Young, and Ms. Cole then talked on the phone to calm Ms. Cole down.  Testimony of E. Young.

98.    Also on October 17, 2023, Mr. Young transferred $100,000.00 from his Bank of America checking account (2131) to his Fidelity account (1294), $45,000.00 from his Bank of America checking account (2131) to a different Fidelity account (1632), transferred $6,000.00 to Ms. Young.  Exhibit P-36, p. 30, 35.

99.    On October 18, 2023, Ms. Young and the Coles returned to Spokane.  Testimony of S. Young.

100.    On October 18, 2023, Mr. Young wired $6,000.00 to a title company as earnest money on the Golden Court home.  Exhibit P-37, p. 32.

101.    On October 19, 2023, at 12:32 a.m. Mr. Young submitted his mortgage application listing $242,314.62 as a gift from a relative. Exhibit P 24, p. 6.

102.    Mr. Young sent the gift letter to Rocket Mortgage and Guaranteed Rate. Testimony of E. Young.

103.    On October 20, 2023, the Youngs and the Coles sat down to discuss the situation.  Exhibit P-51; Exhibit D-116; Testimony of L. Cole, S. Young, and E. Young.

104.     Ms. Cole secretly recorded the conversation on October 20, 2023.  Testimony of L. Cole.

105.     Immediately after the discussion, concerned that Mr. Young had her Chase bank account number, Ms. Cole went to Chase Bank and moved all her money into a new account. Testimony of L. Cole.

106.     Upset by what had occurred, the Coles decided to move all their belongings out of the Youngs' home and leave on October 21, 2023.  Testimony of L. Cole, S. Young, and E. Young.

107.     Before leaving the parties again sat down to discuss the situation and Ms. Young secretly recorded the conversation.  Testimony of L. Cole, S. Young, and E. Young.

108.     Mr. and Ms. Young engaged in extraordinarily manipulative tactics during the October 20, 2023, and October 21, 2023, conversations.  Exhibit P-51; Exhibit D-116.

109.     Ms. Young relied on emotional manipulation, pointing out Ms. Cole's medical issues, the fact that she needed someone to take care of her, and that Ms. Young had turned down a job just to be available to care for Mr. and Ms. Cole.  Exhibit P-51; Exhibit D-116.

110.     Ms. Young would use Ms. Cole's relationship with JY, stating "does your grandson mean nothing to you," and telling Ms. Cole that she is not loving toward JY.  Exhibit P-51; Exhibit D-116.

111.     Ms. Young also relied on religion as a form of manipulation, telling Ms. Cole that the great Tribulation[1] was coming, that soon people would be hunting them down with guns, and money would not mean anything.  Exhibit P-51; Exhibit D-116.

112.     Mr. Young engaged in aggressive and condescending tactics during these conversations.  Exhibit P-51; Exhibit D-116.

---

[1] Ms. Young testified that the Great Tribulation is the end of days and that Jehovah Witnesses believed the Great Tribulation was within two years of occurring.

113.    Mr. Young insisted that Ms. Cole has short-term memory "fails" and when Ms.

Cole objected to this, Mr. Young stated, "we see it every day and I don't care if you don't like it."

Exhibit P-51; Exhibit D-116.

114.    Mr. Young told Ms. Cole that she should be thankful that she can "let go of the

reigns" and allow him to manage the money, that based on all the turmoil Ms. Cole has caused

that transferring the money to his account "turned out to be the best thing forward,"  that if the

Coles had been in touch when Mr. Cole received his inheritance that Mr. Young could have

saved them a million dollars, and that Ms. Cole should show Mr. Young gratitude for all he is

doing for her.  Exhibit P-51; Exhibit D-116.

115.    Mr. Young told Ms. Cole that he did not share the "family plan" with her before

the wire transfers because she was "unreasonable."  Exhibit P-51; Exhibit D-116.

116.    Mr. Young told Ms. Cole that it was "obscene what [she] has done to this family,"

that the house sale was not going to be thrown over by her mental aberrations, that she was

selfish and untrusting of people who were only trying to help her.  Exhibit P-51; Exhibit D-116.

117.    Mr. Young also told Ms. Cole that he had reported the issue to the church elders.

118.    When Ms. Cole demanded a copy of all the paperwork including a copy of the "so

called gift letter" Mr. Young responded, "you get nothing" because you "have no right …

absolutely none, at this moment you have no right to demand anything."

119.    Around this time, Ms. Flaherty received a "panicked and frantic" call from Ms.

Cole.  Testimony of Rebecca Flaherty.

120.    Ms. Cole asked Ms. Flaherty who was going to be listed on the house title and

seemed confused that she and Ted Cole were not included on the title.  Testimony of R.

Flaherty.

121.    Ms. Cole asked Ms. Flaherty to rescind the purchase and sale agreement but Ms. Flaherty could not do that because Linda and Ted Cole were not parties to the contract. Testimony of R. Flaherty.

122.    On October 26, 2023, Ms. Cole sent a text message to Ms. Young demanding the return of all the money.  Exhibit P 31, p. 3.

123.    Ms. Young responded by stating "if you desire the gift funds to be repaid, we can do that, but it constitutes mortgage fraud and is a felony which can incur a fine and prison time. That's why Eric has said repeatedly, [sic] once the mortgage paperwork kicked off, things were in motion and irrevocably proceeding."  Exhibit P-31, p. 6-9.

124.    On October 30, 2023, Ms. Cole again sent a text message to Ms. Young asking for the return of the money.  P 32, p. 2-3; D-115, p. 817.

125.    This text read, "Good afternoon, Dad and I just wanted to make sure you know that we have changed our minds about buying the house and moving to Spokane with you.  We know that you will be disappointed by our decision, and for that we are sorry.  We don't feel that our families living together is in the best interest of either family.  We would like all the money that Eric transferred out of our bank account.  The $242,324.63 on 10/12/23, and the $119,698.04 that you both said was accidentally deposited into your own account by the bank on 10/16/23.  The total amount is $362,012.66.  Yes, we are aware that Eric made me sign a blank piece of paper so that he could type up a gift fund letter to be able to acquire the mortgage loan.  The down payment was supposed to be $180,000.00.  We are insisting that you cancel the loan immediately because it has not cleared escrow.  So no one will be committing mortgage fraud.  We are trying hard for this to take place with decency and with Jehovah's view in mind.  We hope your thinking is the same as ours regarding this matter.  Dad and Mom." Exhibit D-115, p. 817.

126.    The same day, the Coles, through counsel, sent a letter to the Youngs and to Ms. Flaherty demanding a return of the money.  Exhibit P-6.

127.    On November 3, 2023, a second letter to Ms. Flaherty notifying her of the dispute over the funds the Youngs intended to use for the purchase of the home.  Exhibit P-8.

128.    On November 6, 2023, Mr. Young transferred the remaining $180,000.00 from his Bank of America account (2131) to his Bank of America business account (9509).  Exhibit P-37 p. 7, 40.

129.    On November 7, 2023, Mr. Young transferred the same money from his Bank of America business account to his Fidelity account.

130.    On November 7, 2023, Mr. and Ms. Cole filed a lawsuit in Spokane County Superior Court alleging conversion and fraud against the Youngs.

131.    At an emergency hearing that day, Mr. Young testified that the money was in his Fidelity account.  Exhibit P-38, p. 9.

132.    The court froze the money in Mr. Young's Fidelity account and told the Youngs not to utilize the funds.  Exhibit P-38.

133.    During this hearing, Mr. Young told the court that he had spent about $82,000.00 of the money to pay down the debt to qualify for the mortgage.  Exhibit P-16, p. 1.

134.    The court entered a temporary restraining order but did not set a bond.  Exhibit P-49.

135.    Sometime after the lawsuit was filed, Mr. Young sent Ms. Cole two disappearing text messages.  Exhibit P-11; Testimony of L. Cole.

136.    Ms. Cole was able to take a screen shot of the second text message before it disappeared.  Exhibit P-11; Testimony of L. Cole.

137.    In the message, Mr. Young stated "[a]lso wanted to let you know, we have an attorney now, and the court result is not going to go well for you, mom if you persist in this effort.

Just want to remind you that you have the ability to stop this baseless action any time by withdrawing your filed complaint. This is no threat of any kind, just a statement of truth because we have all the necessary documentation to establish truth in court, which is only going to end up with you hurting yourself. Not to mention that taking brothers to secular court is completely against the guidance of Jehovah's organization. That will also not go well for you. We will be filing replies and motions in the next week, so you still have a few days to stop the unreasonableness. Hope you guys are doing ok with your heath." Exhibit P-11.

138.    Ms. Cole took this text as a threat. Testimony of L. Cole.

139.    Mr. Young disagreed that the message was a threat and testified that he was playing around with new technology when he sent the disappearing text.

140.    On November 11, 2023, Mr. Young's mortgage application was denied listing key factors that affected Mr. Young's credit score including serious delinquency, time since delinquency is too recent or unknown, proportion of balance to credit limits too high on revolving accounts, and number of accounts with delinquency. Exhibit 13, p. 2-3.

141.    On December 29, 2023, Mr. Young reached out to Ms. Flaherty asking for wire instructions to transfer additional earnest money on the Golden Court home in exchange for the seller extending the closing date. Exhibit P-10.

142.    The title company told Mr. Young that they would not be able to accept any additional wire transfers due to the temporary restraining order. Exhibit P-15.

143.    On February 2, 2024, the court entered a preliminary injunction and ordered the Youngs to move the money into the Coles' attorney's trust account and provide an accounting of any money spent by February 6, 2024. Exhibit P-50.

144.    Bond was set at $0.00. Exhibit P-50.

145.    By February 15, 2024, the Youngs had failed to transfer any money or provide an accounting of the disputed funds. Exhibit P-35.

146.     On February 20, 2024, the court found the Youngs in contempt when, in violation of the order, the Youngs sent the Coles a cashier's check for $119,698.04, only transferred $100.00 to the trust account, and failed to provide an objective account of the remaining funds. Exhibit P-35, P-39.

147.     At a review hearing on February 22, 2024, the Youngs admitted to purchasing a RV for $82,799.20 on February 14, 2024, and failed to account for remaining funds.  Exhibit P-35, p. 2; Exhibit P-40, p. 12-15.

148.     The court found the Youngs in contempt, awarded temporary possession of the RV to the Coles, and ordered the Youngs to provide an accounting of the remaining funds by the next morning or deposit $56,508.24 of the unaccounted funds into the Coles' attorney's trust fund.  Exhibit P-35, P-40.

149.     The court found the Youngs intransigent for failing to provide a full accounting of the disputed funds, sanctioned the Youngs for $2,000.00 for failing to provide the accounting, sanctioned the Youngs $5,000.00 for their intransigence, and awarded Mr. and Ms. Cole their reasonable attorney fees.   Exhibit P-35.  The court also warned the Youngs that it would consider incarceration as its last alternative.  Exhibit P-40.

150.     At a review hearing on February 23, 2024, the Youngs admitted to spending an additional $7,449.00 at RVs Northwest for a warranty package on February 14, 2024, as well as approximately $8,000.00 on motorcycles.  Exhibit P-41, p. 12-13.  The Youngs failed to provide an accurate accounting of the remaining funds.  Exhibit P-41.

151.     The court issued a civil bench warrant for Mr. Young's arrest and had him detained on a bond of $39,107.70, the amount of money that continued to be unaccounted for. Exhibit P-41, p. 19.

152.     The parties stipulated to a forensic accountant, but the Youngs thereafter objected to the selected individual and hired their own accountant. Exhibit P-41, P-42.

ORDER                                                                    Page 18 of 27

153.    Review hearings on February 27, 2024, February 29, 2024, and March 1, 2024, did not produce any additional information.  Exhibit P-42, P-43, P-44.

154.    At a review hearing on March 4, 2024, the court was provided with complete copies of Ms. Young's Wood Forest National Bank statements from October 21, 2023, until February 26, 2023, a complete set of the Bank of America regular checking bank statements from October 2023, until February 29, 2024, but not a complete set of the Fidelity statements and the court was unable to account for the missing $39,107.70.  Exhibit P-45.

155.    At a review hearing on March 6, 2024, the court had the opportunity to review two expert accounting reports as well as full statements from all bank accounts and found two transfers of $7,950.00 and $3,500.00 from February 21, 2024, that were unaccounted for.  Exhibit P-46, p. 4.

156.    The Youngs reported that $7,950.00 on February 21, 2024, was a prepayment of rent for two months and $3,500.00 was withdrawn for living expenses.  Exhibit P-46, p. 7.

157.    At a review hearing on March 13, 2024, $7,950.00 and $3,500.00 were accounted for and Ms. Young found a $24,000.00 cashier's check at their home.  Exhibit P-47.

158.    While the Youngs argued that the $24,000.00 was not from the disputed money but instead it was from a 401(k) loan, the court discovered that Mr. Young utilized $21,000.00 of the disputed money to pay off a 401(k) loan and then immediately took out another loan.  Exhibit P-47.

159.    The court ordered Mr. Young to endorse the cashier's check so it could be placed in the trust account.  Exhibit P-48.

160.    At the time of trial, all that remained of the disputed funds ($242,334.62) was $24,000.00 in cash and the RV originally worth about $82,799.20.

161.    At trial, Eric Young testified that when the Coles decided to contribute the downpayment funds there was no verbal or written agreement as to ownership of the home.

162.     Mr. Young testified extensively as to the "family plan" which he alleges the parties understood to mean that Mr. Young would be the only one on the home title and mortgage and that the home would be placed in trust for the parties.

163.     Mr. Young testified that he was not going to allow Ms. Cole's "psychosis" to derail the "family plan" and that when the Coles backed out of the family arrangement, they lost the right to have input into the "family plan."

164.     Mr. Young testified that once the home purchase process began that the Coles could not change their mind and while he could have stopped the home purchase, there would have been costs associated with it.

165     Mr. Young provided contradictory testimony regarding whether the additional money deposited into his account by mistake was a gift or not.

166.     First, Mr. Young acknowledged that the amount over $180,000.00 ($62,334.62) and the $119,698.04 was not a gift.

167.     Second, Mr. Young testified that the additional $62,334.62 was earmarked for remodeling the basement of the Golden Court home as well as the Baker City home and that Ms. Cole had empowered him to take care of hiring contractors.

168.     Third, Mr. Young testified that the full $242,334.62 was ultimately a gift.

169.     Ms. Young also provided contradictory regarding whether the additional money was a gift.

170.     While recognizing that $119,718.04 was not a gift, Ms. Young testified that Ms. Cole allowed the transfer so the Youngs could pay for any of Mr. and Ms. Cole's needs or wants.  Ms. Young testified to a pair of gloves that she had purchased for Mr. Cole with the money.

171.     When asked why he did not transfer the $119,718.04 to Ms. Cole when he discovered the mistake, Mr. Young testified that he was busy.

172.    When asked why she did not return to the money to the Coles, Ms. Young testified that "when you make a vow, you pay.  That is why we were willing to send that $119,000.00 that we no longer were going to be using as a part of this arrangement with her."

173.    When asked why he did not give the money back after the Coles requested it, Mr. Young testified that he needed to use the money for living expenses.  He testified that he had applied for Family Medical Leave Act (FMLA) time off to care for Ms. Cole from the end of October 2023 until the end of January 2024.  After the fall-out from the house purchase, Ms. Cole refused to sign the FMLA forms leaving him "high and dry" without an income for that period.

174.    Both Mr. and Ms. Young testified that Ms. Cole is a narcissist and that her short-term memory causes her to forget things within hours.

175.    Mr. Young testified extensively that what he called Ms. Cole's "mental aberrations" and how he was not going to let them derail the "family plan."  He also testified that he must treat the Coles like children, stating that "it was like taking care of children who can't think for themselves anymore or when they do they hurt themselves …."

176.    When asked at trial why Mr. Young just didn't stop the house sale and give the money back, Mr. Young testified that things were already in the works for other costs, that he had hired workers for the Baker City remodel, that he had hired his brother to do the engineering on the Baker City remodel, and that it was all for the Coles' benefit.

177.    Ms. Cole testified that she believed what the Youngs told her about the home and that she believed she could rely on what they told her.

178.    Ms. Cole testified that she believed that the Youngs were looking out for the Coles' best interest and that the Coles were looking out for the Youngs' best interest.

179.    Ms. Cole testified that she never intended to give Mr. Young $180,000.00 but instead intended to pay the downpayment directly from her bank account.

180. Virginia Tate, a forensic accountant, testified that just before October 2023, the Youngs were running at a financial deficit every month.

181. Ms. Tate testified that just prior to the October 16, 2023, transfers, the Youngs had $321.02 in their Bank of America checking account (2131), $276.71 in their Bank of America business account (9509), and $5,619.05 in all of Mr. Young's Fidelity account.

182. Ms. Tate testified that between October 16, 2023, and February 28, 2024, the Youngs had moved the disputed money between different accounts more than 50 times and conducted over 100 stock transactions.

183. Ms. Flaherty testified that the downpayment would not need to be wired for the sale of the home until the closing date in mid-November 2023.

184. Mr. Young acknowledged that he would not have been able to purchase the home without the Coles' money.

185. Ms. Young continued her emotional manipulation during trial by approaching Ms. Cole during a break and asking her if she wanted to see a picture of JY.

186. Having the ability to hear and see Mr. and Ms. Young's testimony, the court finds that it was not credible. Testimony from Mr. and Ms. Young was often contradictory, evasive, and argumentative.

187. Mr. Young's testimony that Ms. Bruce told him that only the third page (hold harmless agreements) needed to be signed and notarized by Ms. Cole is at direct odds with Ms. Bruce's email. In fact, Ms. Bruce's email highlighted the signature line on page one of the wire transfer forms for Ms. Cole's signature.

188. Mr. Young's testimony that Ms. Bruce told him that Ms. Cole's signature was not needed on page one of the wire transfer forms is at direct odds with his own testimony that Ms. Cole signed page one of the wire transfer forms on October 15, 2023, with Ms. Young. Exhibit P-21, p. 53; Testimony of E. Young.

189.    According to Ms. Young, Mr. and Ms. Cole were in Baker City, Oregon from October 15, 2023.  That means that, according to Mr. Young, after Ms. Cole left the notary, she carried the unsigned wire transfer forms with her to Baker City and signed them the following day.

190.    Ms. Young then took the signed forms back to Spokane in the early morning hours on October 15, 2023, and gave them to Mr. Young to email Ms. Bruce on October 16, 2023.

191.    That means either Ms. Young obtained Ms. Cole's signature on page one of the wire transfer forms in the early morning of October 15, 2023, despite being at the notary in Spokane the day before signing paperwork for the wire transfer, and drove it to Spokane, or, as Ms. Cole testified, Ms. Cole never signed these forms.

192.    Mr. Young's testimony that Mr. Anderson set aside pages one and two of the wire transfer forms and only notarized page three is at odds with Mr. Anderson's testimony.

193.    Mr. Anderson credibly testified that he was presented with two identical, one-page forms for Ms. Cole to have notarized.

194.    Mr. Anderson was not motivated to lie, and he documented his notary contemporaneously.

195.    Mr. Young had Ms. Cole's electronic signature on October 11, 2023, and he and/or Ms. Young had access to Ms. Cole's email on October 13, 2023.

196.    The court finds the Youngs' testimony implausible and conflicting.

197.    The court finds that more likely than not, Ms. Cole's signature was required on all the highlighted portions of the wire transfer forms.

198.    The court finds that more likely than not, Mr. Young affixed Ms. Cole's electronic signature to the wire transfer forms.

199.    The court finds that more likely than not, Ms. Cole never saw the full wire transfer form packet.

200.    Mr. Young's testimony that he told Ms. Cole about the money being transferred into his account instead of her account on October 14, 2023, is not consistent with Ms. Young's testimony that she told Ms. Cole about the mistake on October 16, 2023, or with Ms. Cole's actions after that Ms. Cole discovered the mix-up Ms. Cole made a police report and began to "freak out."    Ms. Cole also moved the remainder of her money in to a new account.

## CONVERSION OR CIVIL THEFT

201.    Conversion, or civil theft, occurs when someone willfully interferes with another's property by either taking the property or unlawfully retaining the property, therefore depriving the owner of its possession.  *Burton v. City of Spokane*, 16 Wn. App. 2d 769, 773, 482 P.3d 968 (2021).

202.    "Wrongful intent is not an element of conversion, and good faith is not a defense." *Id.*

203.    The Coles carry the burden of proof to show conversion by a preponderance of the evidence. *Id.*

204.    The Coles have shown that, more likely than not, the Youngs took and retained $242,314.62 and deprived them of the use and possession of it.  The Youngs provided no evidence to the contrary.

205.    It is undisputed that the parties agreed that Mr. and Ms. Cole would put $180,000.00 as a downpayment on the Golden Court home.  While the money may have been designated as a gift for purposes of obtaining a mortgage, there is no evidence from any party that it was ever Mr. and Ms. Cole's intent to give the money to Mr. and Ms. Young outside of the home purchase.

206.    Once the parties' agreement fell through, except for the $6,000.00 non-refundable earnest money, Mr. and Ms. Young had no right to retain and use those funds.

207.    It is undisputed that the additional $62,314.62 above the $180,000.00 transferred into Mr. Young's account was not a gift.  Despite this, Mr. and Ms. Young have not returned the money.

208.    It is also undisputed that $119,698.04 was never supposed to be transferred into Mr. Young's account and even though the Youngs acknowledge this, they refused to return the funds until February 14, 2024.

209.    Mr. and Ms. Cole have been deprived of the use and possession of their money.

**FRAUD**

210.    To prove fraud, the Coles must show by clear, cogent, and convincing evidence the nine elements of fraud, or in the alternative, may show that the Youngs breached an affirmative duty to disclose a material fact.  *Baddeley v. Seek*, 138 Wn. App. 333, 338, 156 P.3d 959 (2007).

211.    The nine elements are: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the Youngs knew the fact was false or was ignorant of its truth; (5) the Youngs intended the Coles to act on the fact; (6) the Coles did not know the fact was false; (7) the Coles relied on the truth of the fact; (8) the Coles had a right to rely on it; and (9) the Coles had damage.  *Id.* at 338-339.

212.    The Coles cannot establish a claim of fraud.

213.    The Coles must show that the Youngs misrepresented an existing fact.  Even if the court found that there was an agreement to put the Coles on the title and mortgage, a promise to do something is not an existing fact.

IT IS ORDERED that:

The Coles are awarded $24,000.00 in their attorney's trust account, title to the RV, and a judgment of $129,515.42. The Coles are awarded prejudgment interest (12%) on the wrongfully withheld $119,698.04 from October 16, 2023, until February 14, 2024. The Coles are awarded prejudgment interest (12%) beginning October 26, 2023, and post judgment interest (12%) on the remaining amount, $129,515.42.

This judgment is to be paid within 30 days. If not paid, it may be reduced to a judgment without notice to Mr. and Ms. Young.

*[signature]*

Judge Jacquelyn High-Edward 03/10/2025

I, Cat Czako, certify that on March 10, 2025, I emailed copies of the foregoing

Order to :

| Matthew A Mensik<br>905 W Riverside Ave Ste 208<br>Spokane, WA 99201-1099<br><mam@rnwlg.com> | Eric Young<br>eyoung-encrypt@pm.me | Susan Young<br>jaegersmum@proton.me |
|---|---|---|

I certify under penalty of perjury under the laws of the state of Washington that the

forgoing is true and correct.

Date: March 10, 2025

_Cat Czako_

Cat Czako, Judicial Assistant to
Jacquelyn M. High-Edward
Superior Court Judge